**THE FANO FAMILY OF FAGAALU, by its representatives
Faatiliga Tapuvae, Tautai A.F. Faalevao, Seanoa B. Fano,
Fealofani Shimasaki, Leafu Tilei, and Faagai Fano, Plaintiffs,**

**v.**

**AMERICAN SAMOA GOVERNMENT, ASG HOSPITAL
AUTHORITY, ITS CHIEF EXECUTIVE OFFICER TAUFETE`E
JOHN FAUMUINA JR., THE HARBOR CONSTRUCTION CO.,
AND APECS CONSTRUCTION, Defendants.**

High Court of American Samoa
Land and Titles Division

LT No. 34-04

October 26, 2004

Before RICHMOND, Associate Justice, and TAPOPO, Associate Judge.

Counsel: For Plaintiffs Fano Family, Tautai A.F. Faalevao
For Defendants American Samoa Government, ASG Hospital
Authority, and Taufete'e John Faumuina, Jr., Diane Roy,
Assistant Attorney General
For Defendants, The Harbor Construction Co., Apecs
Construction, William H. Reardon

ORDER DENYING APPLICATION
FOR PRELIMINARY INJUNCTION

### Introduction

In 1965, Defendant American Samoan Government ("ASG") acquired land in Fagaalu owned by Fano Shimasiki and the Fano family ("Plaintiffs") through condemnation proceedings, upon which it constructed the Lyndon B. Johnson Tropical Medical Center ("LBJ"). In 2003, LBJ began additional construction of a new building and a stream relocation project within the condemned portion of the property. On October 5, 2004, Plaintiffs filed a motion for a temporary restraining order and an application for preliminary injunction to enjoin ASG from LBJ construction projects, arguing that the construction is a trespass and an interference with the use and enjoyment of family lands. On October

6, 2004, we granted the motion for a temporary restraining order stopping the construction.

Plaintiffs' complaint seeks preliminary and permanent injunctions, damages arising from trespass to land, and quieting of title. Plaintiffs argue that the condemnation statutes that were in effect at the time of the taking on April 15, 1965, through the condemnation proceedings ending on May 19, 1967, were retroactively invalidated by provisions in the Revised Constitution of American Samoa, effective on July 1, 1967, which requires approval by a 2/3 vote during successive legislatures of statutes affecting alienation of communal land. Plaintiffs maintain that in the absence of such successive legislative approval, the condemnation proceedings were unconstitutional, and thus the ongoing hospital construction is in fact on their still-owned family land.

Having considered the parties' arguments and reviewed the constitutional and statutory authority, we deny Plaintiff's preliminary injunction application.

## Discussion

Plaintiffs seek an injunction pursuant to A.S.C.A. § 43.1303. Under section 43.1303(a)(1), a preliminary injunction may be issued by a competent court only after "there has been a hearing in which sufficient grounds for the issuance of a preliminary injunction has been established by a preponderance of the evidence adduced." Pursuant to A.S.C.A. § 43.1304(j), in order to establish "sufficient grounds" for the issuance of a preliminary injunction a party must show that:

> (1) there is a substantial likelihood that the applicant will prevail at trial on the merits and that a permanent injunction will be issued against the opposing party; and
> (2) great or irreparable injury will result to the applicant before a full and final trial can be fairly held on whether a permanent injunction should issue.

### I. Subject Matter Jurisdiction

Defendants claim that this Court cannot have jurisdiction over this matter until Plaintiffs have exhausted their administrative remedies with Defendant American Samoa Government ("ASG") under the Government Tort Liability Act ("GTLA"). A.S.C.A. §§ 43.1201-.1213. Pursuant to section 43.1205(a):

220

[a]n action may not be instituted upon a claim against the government for money damages for damage to or loss of property, or personal injury or death, caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment unless the claimant has first presented the claim to the Attorney General and his claim has been finally denied by the Attorney General in writing, notice of the denial sent to claimant by certified or registered mail. The failure of the Attorney General to make a final disposition of a claim within 3 months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for the purposes of this section.

■■■ The requirement of filing an administrative claim, pursuant to A.S.C.A. § 43.1205, before filing suit is jurisdictional. *See Bryant v. Southwest Marine of Samoa, Inc.*, 22 A.S.R.2d 23, 24 (Trial Div. 1992). Noting that a preliminary injunction is a form of relief, and not itself a claim or a cause of action, we are now faced with the question of whether the three month exhaustion requirement applies equally to applications for preliminary injunctive relief, in addition to the underlying claim against ASG.

■ The exhaustion requirement is similar to the nearly identical language found in the Federal Tort Claims Act ("FTCA") at 28 U.S.C. § 2675. *See Gobrait v. American Hotels, Inc.*, 1 A.S.R.2d 1 (Trial Div. 1978). Federal case law indicates that injunctive relief is not available under the FTCA. In *Smith v. Bakke*, 996 F.2d 1227 (9th Cir. 1993), for example, plaintiff sought damages and injunctive relief against the U.S. Postal Service. The court noted that the FTCA provides only a limited waiver of federal sovereign immunity, and as such, to the extent that plaintiff sought injunctive relief against the postal service, the United States had not waived its immunity under the statute. *Id.*; *see also Westbay Steel, Inc. v. United States*, 970 F.2d 648, 651 (9th Cir.1992) (the FTCA does not submit the United States to injunctive relief); *Women Prisoners of the District Columbia Dept. of Corrections, et al., v. District of Columbia*, 899 F. Supp. 659, 666 (D.D.C. 1995) (the FTCA does not provide a waiver of sovereign immunity for equitable relief).

■ Likewise, in *Ferstle v. A.S.G.*, 4. A.S.R.2d 160, 166 (1987), we concluded that the Territory of American Samoa possesses immunity from suit without its consent or waiver. In that same case, we also observed that the GTLA "particularizes the limited circumstances of sovereign consent." *Id.* at 167. Pursuant to A.S.C.A § 43.1203:

221

(a)  The government is liable, except as otherwise provided in this chapter, in the same manner and to the same extent as a private individual under like circumstances, but is not liable for interest prior to judgment or for punitive damages . . .

(b)  The provisions of this chapter do not apply to:

(5)  any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights.

■ In the current case, Plaintiffs' allegations lie in trespass, and "deprivation of use and enjoyment of land," which appears to amount to a claim of nuisance.  Neither of these alleged tort violations, whether giving rise to damages or injunctive relief, fall within the enumerated exceptions to the GTLA sufficient to bypass the administrative exhaustion requirement.  Thus, to the extent that this is the basis on which Plaintiffs presently apply for a preliminary injunction, Defendants are correct in observing that this court does not have jurisdiction to entertain such a motion.

■ Plaintiffs' fourth cause of action, however, is to quiet title to the land plaintiffs believe that ASG unconstitutionally condemned and now seeks to further improve.  As such an action is not one in tort, it does not fall within the administrative exhaustion requirement.  Moreover, in the context of a party seeking to quiet title by challenging the constitutionality of the ASG condemnation proceedings, ASG implicitly waives sovereign immunity, allowing court jurisdiction without ASG's consent.  *See, e.g., Hair. v. U.S.*, 350 F.3d 1253, 1257 (Fed. Cir. 2003) (stating in the federal context that "sovereign immunity does not protect the government from a Fifth Amendment takings claim."); *see also Nika Corp. v. City of Kansas City, Mo.*, 582 F. Supp. 343 (W.D. Mo. 1983) ("the Fifth and Fourteenth Amendments do effect a waiver or nullification of sovereign immunity" in the context of a taking). Therefore, because this court presently does have jurisdiction over the limited issue of title to the disputed parcel, we must now examine whether the injunctive relief related to further improvements upon the land is warranted.

## II. Likelihood of Success on the Merits

Plaintiffs correctly point out that under Article 1, Section 3 of the Revised Constitution of American Samoa, effective July 1, 1967:

> [s]uch legislation as may be necessary may be enacted to protect the lands, customs, culture, and traditional Samoan family organization of persons of Samoan ancestry, and to encourage business enterprises by such persons. No change in the law respecting the alienation or transfer of land or any interest therein, shall be effective unless the same be approved by two successive legislatures by a two-thirds vote of the entire membership of each house and by the Governor.

Plaintiffs argue that such language is retroactively applicable to the condemnation statute in effect in 1965, and therefore renders the condemnation proceedings at issue invalid, while Defendants maintain that the constitutional provision is prospective in nature, and thus not applicable to the statute in effect at the time of condemnation.

We need not address the issue of retroactive applicability of the Revised Constitution in light of the controlling constitutional authority at the time of the 1965-67 condemnation. At the time of the condemnation proceedings, the 1960 American Samoa Constitution was in effect. Article 1, Section 3 of the 1960 Constitution states, identically to the same provision in the Revised Constitution, that no alienation of Samoan lands should be allowed unless "approved by two successive legislatures by a two-thirds vote of the entire membership of each house and by the Governor." Therefore, because such constitutional language was already in effect in 1960, and merely reaffirmed in 1967, there is no period at issue in which legislative approval of statutes effecting alienation of land was not constitutionally required in American Samoa.

Having determined that the constitutional language Plaintiffs emphasize was indeed applicable at the time of condemnation, albeit through the 1960 Constitution, we must next examine the constitutionality of the 1965-67 condemnation proceedings. Title VII, Chapters 7.01 and 7.02 adopted by the 7th Legislature in 1962 and again by the 10th Legislature in 1967 represent the applicable code pertaining to condemnation authority of the ASG and proper condemnation proceedings during the period at issue here. *See* REVISED CODE OF AMERICAN SAMOA (1961 ed., as amended through 11th Leg.) To be valid under Article 1, Section 3 of the 1960 Constitution, however, the statutes must have been "approved by two successive legislatures by a two-thirds vote of the entire membership of each house and by the Governor." Article II, Section 5 of the 1960 Constitution states that legislative elections "shall be held bienually [sic] in each even numbered year . . . in November." In the

current case, the Title VII laws were adopted by the 7th Legislature in 1962. Even if we were to hypothetically assume that the code was first adopted as late as December 1962, and reaffirmed at the earliest in January 1967 by the 10th Legislature, it would be mathematically impossible under a system of biannual elections for the statutes to comply with the "successive legislature" requirements of Article I, Section 3.

■ Plaintiffs make reference to Public Law 16-88 and 17-31, in which the 1980 and 1982 Legislatures reenacted, through successive legislatures, enumerated land alienation statutes in order to render them in conformity with the legislative approval requirements of Article I, Section 3. We agree with Plaintiffs that these laws have no bearing on the statute at issue. Public Laws 16-88 and 17-31 state that the formerly invalid alienation statutes "are new enactments to the extent invalid and shall be given effect as new enactments." Because, as Defendants, too, observe, this Court applies a strict rule of construction against retrospective application, the language of the Public Laws suggests that they do not have retroactive effect to the condemnation laws in place during the 1965-67 proceedings. *See American Samoa Gov't v. Meredith*, 28 A.S.R.2d 10, 12 (1995); *American Samoa Gov't v. Meredith*, 28 A.S.R.2d 92, 96 (1995).

Nevertheless, despite the fact that Plaintiffs are correct in their argument that the statutes governing condemnation from 1965-67 fail to comply with Article I, Section 3 of the 1960 Constitution, they have not established that ASG lacked authority to engage in the condemnation proceedings during that time.

First, we note that in addition to the Article I, Section 3 requirements, Article I, Section 2 of the 1960 Constitution simultaneously authorized the government's constitutional right to eminent domain, stating in part that "private property [shall not] be taken for public use without just compensation." Similarly, this Court has earlier stated that:

> [t]he right of eminent domain is of ancient origin. It is an inherent political rights [sic] of sovereignty based on the doctrine of necessity. It is essential to the existence of government—the use of property of the individual for the benefit of all. The constitutions provide only for just compensation for property taken (U.S. CONST amend. V.; REV. CONST. AM. SAMOA art. II) By statute the right is express (A.S.C.A. § 37.2001). For that right to be effective the government must have full and unqualified ownership of the land taken. It must have unrestricted title, whatever name that title may go by. The presumption that all land is communal and the commitment to the Samoan way of life does not

overcome the urgent need for unrestricted title to condemned land. When the original *matai*s ceded this territory to the United States it was with a specific recognition of the right of eminent domain. (Section 2, Treaty of Cession.) That right is not impaired by the communal land system.

■ *Meredith v. American Samoa Gov't*, 2 A.S.R.2d 66, 68-69 (1985).[1] Therefore, while we agree with Plaintiffs that the condemnation statute failed for lack of compliance with constitutional procedure, we do not in turn reason that ASG's right of eminent domain was also unconstitutional. We distinguish between ASG's constitutional right to condemn communal land for a public purpose, and the statutory means by which it does do so. The right to condemn is not dependent upon its statutory implementation, and nor should it be stifled by its procedural failures, for the necessity to transform family communal land for public benefit is an inherent governmental right grounded in Article I, Section 2 of both the original and revised constitutions. That Plaintiffs raise no arguments challenging this constitutional right of condemnation or the compensation received, and raise a statutory challenge for the first time nearly 40 years after the original condemnation proceedings, only bolsters the perspective that eminent domain was an accepted power of ASG.

■ Accordingly, despite Plaintiffs' founded procedural misgivings regarding the constitutionality of the 1965-67 condemnation proceedings, this Court nonetheless concludes that in light of the ASG's constitutional right to condemn the property for a public purpose, and its doing so by providing just compensation, Plaintiffs have not demonstrated that there is a substantial likelihood that they will prevail at trial on the merits. Although Plaintiffs correctly observe that a party is afforded a constitutional right to due process before the ASG can properly condemn land, they received such process in this case after having had the benefit of hearings before the High Court to determine ownership of the land, and before an arbitration board to determine the value of it.

---

[1] Section 2 of the Deed of Cession, although describing the eminent domain authority of the federal government over the territory states that "[t]he Government of the United States of America shall respect and protect the individual rights of all people dwelling in Tutuila to their lands and other property in said District; but if the said Government shall require any land or any other thing for Government uses, the Government may take the same upon payment of a fair consideration for the land, or other thing, to those who may be deprived of their property on account of the desire of the Government."

## III. Irreparable Injury

Because Plaintiffs have failed to establish a likelihood of success on the merits, they have failed to demonstrate "sufficient grounds" in their application for preliminary injunction, and we therefore need not consider the issue of irreparable injury. We note however, the interrelatedness of the two issues in this case. By failing to adequately demonstrate that the land does not belong to ASG, Plaintiffs have not established that the land impacted by the LBJ construction project is in fact family communal land. It follows, then, that Plaintiffs have not shown that the current construction project, wholly within the properly condemned property, causes irreparable injury to them.

### Order

After determining that we have limited jurisdiction over this motion, we find that Plaintiffs have failed to establish sufficient grounds for the issuance of an injunction against the LBJ construction projects on the condemned portion of land. Plaintiffs' application for a preliminary injunction is therefore denied. The temporary restraining order is vacated.

It is so ordered.